**In the United States District Court
for the District of Kansas**

———————

Case No. 21-cv-02228-TC

———————

ALLISON L. M.,[1]

*Plaintiff*

v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Allison M. claims that she cannot work due to several physical and mental disabilities. She seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income benefits pursuant to Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax*

---

[1] Plaintiff will be referred to only by first name followed by initials to protect her privacy. *See e.g., Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

*v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "reasonable mind[s] might accept [it] as adequate to support a conclusion," and as such must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must therefore demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Courts may "not reweigh the evidence or try the issues de novo," but must "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139. The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in

light of the claimant's RFC, age, education, and work experience—that work suitable for the claimant "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in October 2016, alleging disability for a closed period from August 1, 2014, until December 31, 2019. Doc. 12 at 2; Adm. Rec. at 921.[2] After exhausting her administrative remedies before the Social Security Administration, Plaintiff filed suit seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). *Allison M. v. Saul*, No. 2:19-CV-2517, 2020 WL 2101281, at *1 (D. Kan. May 1, 2020). The court found that the ALJ's RFC was not supported by the record. *Id.* at *3–6. As the "evidence and reasons set forth in the ALJ's opinion d[id] not allow for meaningful review of the RFC," *id.* at *7, the Commissioner's decision was reversed, and the case was remanded for further proceedings "to determine Plaintiff's mental capacity limitations." *Id.*

On remand, the ALJ consolidated the proceedings on Plaintiff's November 2018 claim for Disability Insurance Benefits with the proceedings on remand and held another hearing. Adm. Rec. at 921. The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity "during the relevant period between August 1, 2014, and December 31, 2019." *Id.* at 924. The ALJ determined at step two that Plaintiff had the following severe impairments: fibromyalgia; bladder disorder; interstitial cystitis; affective disorder; anxiety disorder; ADD/ADHD; and borderline personality disorder. *Id.* The ALJ classified Plaintiff's menorrhagia and recent onset cephalgia with resolved paresthesia as non-severe and found that "the evidence d[id] not support a medically determinable impairment for [her] alleged schizophrenia." *Id.* at 924–25.

At the third step, the ALJ determined that none of Plaintiff's impairments or combinations of those impairments "meets or medically equals the severity of one of the listed impairments" in the Listing of Impairments. Adm. Rec. at 925. Regarding Plaintiff's fibromyalgia and

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

interstitial cystitis, the ALJ found that neither of these was a listed impairment and that no evidence in the record indicated that either impairment medically equaled a listing. *Id.* Thus, "disability [could not] be established on the facts alone." *Id.* The ALJ also determined, after considering the applicable criteria, that "the severity of [Plaintiff's] mental impairments, considered singly and in combination, d[id] not meet or medically equal the criteria of listings." *Id.* at 925–26.

The ALJ proceeded to assess Plaintiff's RFC. Adm. Rec. at 926–27. The ALJ determined that Plaintiff had the capacity:

> to lift and carry up to 20 pounds occasionally and 10 pounds frequently. She could sit for six hours, but could only stand or walk for two hours out of an eight-hour workday. She could occasionally climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, and crawl. She needed to avoid all unusual hazards – defined in SSR 96-9p as 'moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals.' [She] was able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, repetitive tasks; in a work environment free of fast-paced production requirements; and only simple work-related decisions, with few, if any, workplace changes. She could not tolerate any interaction with the public, but she could tolerate frequent interaction with coworkers and supervisors.

*Id.* At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. *Id.* at 933. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Thus, the ALJ concluded that Plaintiff had not been disabled from August 1, 2014, through the date of the decision. *Id.* at 934–35. That conclusion is now the Commissioner's final decision. 20 C.F.R. § 404.984(d); Doc. 18 at 2.

## II

Plaintiff's objections are based on four distinct issues. They include the ALJ's treatment of one source's findings, the ALJ's assessment of

Plaintiff's impairments, the absence of records from Plaintiff's prior appeal, and an alleged inconsistency between the RFC and the vocational expert's (VE) testimony. The Commissioner's final decision is affirmed because all are unpersuasive.

### A

Plaintiff's first objection is that the ALJ should have, but did not, consider evidence from Dr. Mitchell Flesher. An ALJ is not bound to consider a source's findings when the source does not offer a medical opinion. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). For claims filed before March 27, 2017,[3] "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including [the plaintiff's] symptoms, diagnosis and prognosis, what [the plaintiff] can still do despite impairment(s), and [the plaintiff's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008).

The parties agree that Flesher is a licensed psychologist and, thus, an acceptable source. Adm. Rec. at 637; *see* Docs. 12 & 18. But Flesher's reports are not medical opinions because they do not reflect his "judgment" about the "nature and severity" of Plaintiff's impairments. *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008); *see* Adm. Rec. at 637–40, 683–85.

*McDonald v. Astrue* is instructive on this issue. In that case, a claimant argued that an ALJ failed to weigh a set of records constituting a medical opinion. Those records "reflect[ed] the clinicians' observations of [the claimant's] symptoms, the nature of her impairments, and the clinicians' diagnoses" and "addressed in general terms the severity of her symptoms and functional difficulties." *McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012). Yet the clinicians did not "indicate any prognoses," nor "provide opinions as to what [the claimant] could still do despite her impairments or the nature of her mental restrictions." *Id.* The Tenth Circuit therefore found that "the[ir] treatment notes…[did] not qualify as medical opinions." *Id.*

The same is true of Flesher's reports, which primarily use Plaintiff's own complaints to make preliminary findings, recommendations, and diagnoses. The reports do not include Flesher's judgment about the

---

[3] The parties agree that this standard applies. Doc. 18 at n.7; Doc. 21 at n.1.

nature and severity of Plaintiff's limitations or information about her residual abilities. To constitute a medical opinion, the report must "contain…[a] judgment about the nature and severity of" a claimant's limitations or "information about what activities" the plaintiff can still perform. *Cowan*, 552 F.3d at 1189. Since Flesher's reports lacked those qualities, the ALJ did not have to account for Flesher's findings in Plaintiff's RFC.

In his reports, Flesher wrote that Plaintiff could benefit from a combination of medication and "individual psychotherapy," including cognitive behavioral therapy. Adm. Rec. 640, 685. But these treatment recommendations are the only suggestions in his report, which primarily recites Plaintiff's self-reported history and symptoms. It is true Flesher also found that Plaintiff met "diagnostic criteria for Persistent Depressive Disorder; Generalized Anxiety Disorder; and Borderline Personality features" and Attention-Deficit/Hyperactivity Disorder. *Id.* at 639, 684–85. But Flesher did not escalate these diagnoses or his recommendations into a judgment about Plaintiff's capacity. *Id.* at 639–40, 684–85. Without such analysis, his reports do not comprise a medical opinion that the ALJ was bound to consider. *See Cowan*, 552 F.3d at 1189; *Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005).

In her reply, Plaintiff argues that even if Flesher's findings were not a medical opinion as defined in the regulations, they are probative such that the ALJ needed to discuss them before rejecting them. Doc. 21 at 8–9; *see also Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) ("[T]he ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). This argument is waived because it was not raised in the opening brief. In general, "[i]ssues not raised in [an] opening brief are deemed abandoned or waived." *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004) (citation and internal quotation marks omitted). While this general rule is most applicable on appeals, in social security cases, "the district court acts as a first-tier appellate court." *Hamilton v. Sec'y of Health and Hum. Servs.*, 961 F.2d 1495, 1501 (10th Cir. 1992) (citation omitted). Accordingly, the standard

waiver rule is applicable in this case.[4] Under that rule, Plaintiff waived her argument that the ALJ had to analyze Flesher's findings as rejected but still significantly probative evidence.

**B**

Plaintiff next contends that the ALJ's assessments of Plaintiff's hand impairment, headaches, and need for additional restroom breaks were not supported by substantial evidence. These arguments fail.

**1.** First, Plaintiff contends that the ALJ should have adjusted her RFC to account for certain hand abnormalities, including pain, tremors, and numbness. Doc. 12 at 12–13 (attributing these issues, in part, to fibromyalgia flare ups). Since the ALJ omitted these from the RFC, Plaintiff says the RFC is flawed. But the ALJ's decision is supported by substantial evidence, and record evidence cannot be reweighed on appeal to reach a different conclusion. *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 1989).

The ALJ noted that Plaintiff "frequently reported joint pain and/or swelling in her hands and fingers, consistent with her diagnosis of fibromyalgia." Adm. Rec. 928. Nonetheless, the ALJ found that Plaintiff "did not present with any chronic motor, sensory, strength, or reflex deficits reasonably consistent with her allegations, only subjective complaints of pain." *Id.* The ALJ rejected her subjective complaints on other grounds too, noting that the evidence reflected "only mild, intermittent abnormalities, such as tenderness to palpation in her joints." *Id.* Likewise, "exams typically show[ed] normal range of motion [and] strength…with no…swelling or edema." *Id.* These "moderate clinical findings," along with Plaintiff's "subjective reports during the relevant period," showed "that she did not present with any persistent abnormalities reasonably consistent with her allegations of…motor, sensory, reflex, or strength deficits." *Id.*

Plaintiff objects that treating physician Dr. Perry's opinion undermines the ALJ's conclusion, since Perry found significant grasping,

---

[4] Even if Plaintiff did not waive this argument, Flesher's report is not "significantly probative." As described above, Flesher's report consists of bare diagnoses and recitations of Plaintiff's own reports. Its persuasive power is therefore limited. *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (finding that evidence could not be significantly probative where "[o]verwhelming record evidence support[ed] the ALJ's conclusion" on an issue).

turning, and twisting limits. Doc. 12 at 12. But the ALJ rejected Perry's opinion as "not well supported by relevant evidence." Adm. Rec. 930–31. The ALJ explained that "Dr. Perry's…own treatment notes do not document any significant weakness, loss of range of motion in the hands or extremities, or neurological deficits reasonably consistent with her opinion that the claimant could never use her fingers for fine manipulation." *Id.* Other than Perry's unpersuasive opinion, Plaintiff does not marshal evidentiary support for greater limits than those imposed by the ALJ. Plaintiff recites her complaints and treatment history, Doc. 12 at 12, but the ALJ's determination accounted for this evidence, Adm. Rec. 928. In other words, the evidence supporting the ALJ's decision is neither "overwhelmed by other evidence in the record" nor a "mere conclusion." *See Grogan*, 399 F.3d at 1261–62 (citation omitted). Accordingly, the ALJ's determination as to Plaintiff's hands and motor capabilities is supported by substantial evidence.

**2.** Plaintiff's argument that the ALJ should have, but did not, comment on her headaches lacks merit. Doc. 12 at 13. Her headaches often stem from other documented medical conditions, *see* Doc. 18 at 15, and these conditions were thoroughly addressed by the ALJ. Adm. Rec. 927–29.

As Plaintiff summarizes, headache complaints abound in the record. Doc. 12 at 13–14. For example, a portion of Plaintiff's medical record notes that she "developed a headache 2 hours ago, [her] whole body went numb and tingly." Adm. Rec. 1465; Doc. 12 at 14. At one point she "present[ed] to the emergency department with onset of left-sided face and left body numbness" and "endorse[d] [an] associated headache." Adm. Rec. 1611; Doc. 12 at 14. In another instance, she reported a headache as one injury caused by a car accident. Adm. Rec. 726. Sometimes she denied having headaches at all, Adm. Rec. 740, or reported headaches in connection with intermittent illness, Adm. Rec. 759 (noting headache as an "upper respiratory illness symptom[]").

The record shows that many of Plaintiff's headaches are connected to other ailments, such as fibromyalgia and numbness, a car accident, and respiratory illness. *See* Adm. Rec. 726, 759, 1465, 1611. The ALJ addressed many of these ailments in detail. *Id.* And he addressed broader allegations of pain, such as "testimony of…debilitating pain," "alleged chronic pain," and "subjective complaints of pain." *Id.* The ALJ did not distinguish pain caused by headaches from pain caused by other conditions—nor did he have to. *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) ("[A]n ALJ is not required to discuss every piece of evidence."). An ALJ need only "discuss the uncontroverted evidence

he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* Nothing suggests that the ALJ rejected Plaintiff's headache allegations outright. And given the extended discussion of Plaintiff's pain and other conditions, it appears that the ALJ included Plaintiff's headaches even without referring to them by name. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."); *Garrison v. Colvin*, No. CIV.A. 12-1063-JWL, 2013 WL 1411774, at *9 (D. Kan. Apr. 8, 2013) ("Plaintiff's argument that the ALJ failed properly to evaluate her level of pain seeks merely to have the court reweigh the ALJ's credibility finding and substitute its judgment for that of the ALJ.").

Moreover, the ALJ claims to have "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent" with the evidence. Adm. Rec. 928. When an "ALJ indicates [s]he has considered all the evidence[,] our practice is to take the ALJ at [her] word." *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted). This statement is additional evidence that the ALJ's thorough discussion of Plaintiff's pain incorporated her headache allegations.

**3.** Similarly, the ALJ adequately accounted for Plaintiff's need for additional restroom breaks. Plaintiff argues that "[a]lthough the ALJ acknowledged IC [interstitial cystitis] as an impairment, he did not adequately address its effect on her functionality." Doc. 12 at 14. Specifically, Plaintiff notes that restroom breaks could last up to "10-15 minutes at a time more than once an hour," that her "interstitial cystitis flare ups…required frequent trips to the bathroom," and that "[s]he…experienced bladder spasms and occasionally required emergency procedures." Doc. 12 at 15. This effect is so severe, Plaintiff argues that it "would render her unemployable." *Id.* (referencing vocational expert testimony). But contrary to Plaintiff's assertions, the ALJ fully accounted for Plaintiff's IC.

The ALJ recognized Plaintiff's previous testimony "that she could sit or stand for between 30 and 45 minutes at a time before needing to use the restroom," but found that testimony unsupported by "the objective findings." Adm. Rec. 928. The ALJ explained that "contrary to her allegations of chronic, debilitating pain, with almost daily IC flares, [her] … bladder disorder and [IC] were sufficiently controlled with prescription Vesicare and hydrodistension that she required no other significant care from November 22, 2016 through January 2019." *Id.*

9

Plaintiff does not point to evidence that overwhelms the ALJ's conclusion on this issue. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (noting that substantial evidence does not support a determination when other evidence overwhelms the ALJ's evidence). Nor does she argue that the ALJ's affirmative evidence is less "than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). This objection is therefore unpersuasive.

### C

Plaintiff also argues that the ALJ failed to consider her prior administrative folder and its medical findings. Doc. 12 at 16. But the ALJ was not required to review this information, so its absence does not undermine his determination.

This suit arises from Plaintiff's second application for benefits. Doc. 12 at 16. She filed a separate case in 2015, was found not disabled, and elected not to appeal. *Id.* Still, a record was developed for that first case. *Id.* Plaintiff argues the ALJ should have—but did not—examine that record in making his RFC determination here. *Id.* Without the prior record, she says, the ALJ lacked relevant information which "leaves the…RFC unsupported." *Id.*

But Plaintiff does not explain how the record from the 2015 application denies the ALJ's determination substantial evidentiary support. She notes that the most persuasive experts in this case "considered evidence from only [2018] to [2020]." Doc. 12 at 17. But the ALJ's treatment of the experts in this case does not mean that he failed to consider several years of relevant information, as Plaintiff argues. The ALJ's analysis of her RFC clearly refers to evidence spanning the length of her claim. For example, the ALJ notes that "exams between August 2014 and December 2019 were typically unremarkable." Adm. Rec. 929. He refers to testimony about Plaintiff's symptoms "between 2014 and 2019." Adm. Rec. 927. And he reviews treatment progress for her IC, including when she "established care with Andrew Morris, D.O." in 2015 and "underwent a cystoscopy with hydrodistension of the bladder" in 2016. Adm. Rec. 928.

It is true, as Plaintiff notes, that the prior findings are not automatically irrelevant or inadmissible. Doc. 12 at 17. But she does not explain why the prior findings contradict the ALJ's assessed RFC here. Nor does she contend that the prior records would support additional or different impairments. *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (noting that the plaintiff "does not allege […] functional

limitations…other than those already acknowledged by the ALJ."). There is no basis to conclude that the ALJ's decision lacks substantial evidentiary support. *Contra.* Doc. 12 at 18.

### D

Finally, Plaintiff argues that "the VE [vocational expert] testified inconsistently with the DOT [Dictionary of Occupational Titles]" and "[t]he ALJ did not recognize or resolve" these conflicts. Doc. 12 at 18. But no apparent conflict existed. Since the ALJ did not fail to resolve a conflict between Plaintiff's RFC and the VE testimony, this argument does not require remand.

The VE identified three jobs available to a hypothetical person with Plaintiff's RFC: eyeglass polisher, circuit board assembler, and ampoule sealer. Adm. Rec. 934. Plaintiff argues that each job requires several capabilities inconsistent with her RFC.

**1.** In Plaintiff's view, each occupation involves activity inconsistent with her assessed capacity, including "exposure to toxic, caustic chemicals" and hazards like the "moving mechanical parts of equipment, tools, or machinery." Doc. 12 at 19; Adm. Rec. 927. But the DOT listing for each available job expressly rejects the proposition that they require exposure to hazardous chemicals. DOT § 713.684-038; DOT § 726.684-110; DOT § 559.687-014. The same thing is true for exposure to moving mechanical parts. *Id.* The VE confirmed this when she testified that the identified jobs were consistent with the DOT. Adm. Rec. 934; *Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014) (implicitly crediting a VE's statement that his testimony was consistent with the DOT and an ALJ's hypothetical).

Moreover, Plaintiff's RFC is not as constrained as she implies. Plaintiff cites *Ross D.G. v. Saul*, arguing that a plaintiff who must "avoid all exposures to hazards" cannot work as an ampoule sealer. Doc. 12 at 19 (citing No. 3:20-CV-00274-MAB, 2021 WL 4403095, at *9 (S.D. Ill. Sept. 27, 2021)). But the claimant in *Ross D.G.* had a more restrictive RFC, since he had to "avoid all exposures to hazards." *Ross D. G. v. Saul*, No. 3:20-CV-00274-MAB, 2021 WL 4403095, at *9 (S.D. Ill. Sept. 27, 2021). Plaintiff, by contrast, need only avoid "all *unusual* hazards." Adm. Rec. 926 (emphasis added).

**2.** A similar conclusion follows for Plaintiff's objection that the VE testified inconsistently with her "social, mental, and cognitive functioning" limits. Doc. 12 at 20. The ALJ found that Plaintiff could

"apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, [and] repetitive tasks," when "in a work environment free of fast-paced production requirements" that involved "only simple work-related decisions." Adm. Rec. 927. In alleged contrast, the VE assessed Plaintiff capable of performing jobs that were characterized by "Temperament T"—that is, "attaining precise set limits, tolerances, and standards" in work "characterized by fast-paced or production-quota work." Doc. 12 at 20. Likewise, the VE suggested jobs associated with "Temperament R," which "amounts to production work with little opportunity for diversion or interruption." *Id.* Plaintiff contends that the temperaments associated with the positions the VE identified are inconsistent with her RFC. Doc. 12 at 18.

These detailed "temperament" descriptions do not appear in the DOT itself. Doc. 18 at 22–23; *see also* DOT § 713.684-038; DOT § 726.684-110; DOT § 559.687-014. For this reason, courts often reject reliance on temperament factors from outside the DOT when they are used to identify an inconsistency between VE testimony and an RFC. *See, e.g.*, *Stephanie Beth D. v. Kijakazi*, No. CV 20-2622-JWL, 2022 WL 1136192, at *8 (D. Kan. Apr. 18, 2022). There is no reason to deviate from that practice in this case. The descriptions contained in the DOT itself are not inconsistent with Plaintiff's RFC. So—contrary to Plaintiff's assertions—there was no inconsistency between the VE's testimony and the ALJ's assessed RFC. *Contra* Doc. 12 at 21. Plaintiff's arguments as to the VE are not grounds for reversal.

### III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: September 29, 2023          s/ Toby Crouse
                                  Toby Crouse
                                  United States District Judge